UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARILYN LOUISE ALLEN,

Plaintiff,

v. Case No. 8:12-cv-633-T-23AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.
_________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), Supplement Security Income ("SSI"), and disabled widow's benefits. As the Administrative Law Judge's ("ALJ") decision applied the correct legal standards and was based on substantial evidence, I recommend that the Commissioner's decision be affirmed.

**I.**

**A. Procedural Background**

Plaintiff filed applications for a period of disability, DIB, SSI, and disabled widow's benefits (Tr. 18, ). The Commissioner denied her claims both initially and upon reconsideration (Tr. 61-75). Plaintiff then requested an administrative hearing (Tr. 76). Per her request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-53). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits (Tr. 15-33). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 14). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born on August 30, 1957, claims disability beginning January 1, 2004 (Tr. 118-30, 158-59).[1] She has a tenth-grade education (Tr. 40, 169). Her past relevant work experience includes work as a housekeeper (Tr. 165, 239). She alleges disability due to depression, hallucinations, and memory, back, leg, and neck problems (Tr. 165, 202, 223).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: disorders of the spine with cervical radiculopathy, obesity, a history or polysubstance dependence, a bipolar disorder, and depression (Tr. 21-22). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 22-24). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff was also limited to unskilled work (Tr. 24-27). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the

[1] Plaintiff alleged numerous disability onset dates in her applications for disability benefits (Tr. 120, 124, 159, 160). In rendering his decision, the ALJ used January 1, 2004, as Plaintiff's alleged disability onset date (Tr. 18). Upon request for review to the Appeals Council, Plaintiff amended her alleged onset date to August 30, 2007 (Tr. 251).

presence of medically determinable impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC (Tr. 25).

Considering her noted impairments, however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 27). Given Plaintiff's background and RFC, the ALJ determined by reviewing the Medical-Vocational Guidelines that Plaintiff could perform other jobs existing in significant numbers in the national economy (Tr. 27-28). Specifically, the ALJ found that Medical-Vocational Rules 202.10 and 202.17 directed a finding of not disabled (Tr. 28). Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled (*id.*).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process,

promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Pt. 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules

known as the Medical Vocational Guidelines that are appended to the Regulations and are commonly referred to as "the Grids." 20 C.F.R. Pt. 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether

the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**III.**

Plaintiff argues here that the ALJ erred by (1) finding that Plaintiff could perform the exertional demands of light work because the ALJ implicitly relied on the assessment of a lay state agency single-decision maker whose opinion is not entitled to any weight; (2) not finding Plaintiff's mental impairments more severe, particularly given the new evidence submitted to the Appeals Council; (3) failing to obtain vocational expert ("VE") testimony despite a finding that Plaintiff had severe mental impairments resulting in moderate limitations in concentration, persistence, or pace; and (4) failing to reference lay evidence of record. For the reasons that follow, I find that the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A. RFC**

Plaintiff's first point of contention relates to the ALJ's RFC finding. Namely, Plaintiff argues that the ALJ erred by finding that Plaintiff maintained the ability to perform the exertional demands of light work. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related

symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of the RFC is an issue specifically reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In his decision, the ALJ found that Plaintiff retained the ability to perform light work (Tr. 24).[2] Plaintiff contends that the only evidence supporting the ALJ's RFC finding is that of a single decision-maker ("SDM"), who is not an acceptable medical source, and accordingly that substantial evidence does not support the ALJ's RFC finding. Contrary to Plaintiff's contention, however, the ALJ did not rely solely upon the opinion of a SDM in determining Plaintiff's RFC and, furthermore, substantial evidence supports the ALJ's RFC finding.

In April 2008, Plaintiff saw Dr. Rebecca Bowden at North County Family Healthcare Center (Tr. 277-86). Plaintiff complained of back pain that had lasted ten years and that radiated into her hip and up her neck and arm (Tr. 277-80). Upon examination, Plaintiff's bilateral paralumbar muscles and SI joint were tender to palpatation, but her upper and lower extremities each had a normal range of motion and strength and had no joint enlargement or tenderness (Tr. 279). Plaintiff received medication and was instructed to use a heating pad (Tr. 280). Following

---

[2] The Regulations define "light work" as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. ...

20 C.F.R. §§ 404.1567(b), 416.967(b); *see also* Social Security Ruling (SSR) 83-10, 1983 WL 31251, *5-*6 (S.S.A. 1983).

that, Plaintiff saw Dr. John Edmiston, who diagnosed Plaintiff with hypercholesterolemia (Tr. 281-86).

Later, in August 2008, Dr. Fathy Saad performed a consultative internal medicine examination on Plaintiff (Tr. 256-59). During the examination, Dr. Saad observed Plaintiff as in no acute distress and with a normal gait, a normal stance, the ability to walk on her heels and toes without difficulty and the ability to squat half-full (Tr. 257). Plaintiff used no assistive devices, needed no help changing for the exam or getting on or off the exam table, and was able to rise from her chair without difficulty (*id.*). Her cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally (Tr. 258). She had no scoliosis, kyphosis, or abnormality of the thoracic spine (*id.*). Further, Plaintiff had a full range of motion of her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally (*id.*). Plaintiff's strength was 5/5 in her upper and lower extremities and her joints were stable and non-tender (*id.*). Dr. Saad observed that Plaintiff had no motor or sensory deficits, no muscle atrophy, and that her finger dexterity was intact with grip strength 5/5 bilaterally (*id.*). After examination, Dr. Saad diagnosed Plaintiff as having chronic low back pain with history of scoliosis over twenty years ago, which was stable on no medication; a history of right facial Bell's palsy, which was treated and for which Plaintiff did not take any medication; a history of depression, by history only and for which Plaintiff did not take any medication; a history of asthma, by history only and for which Plaintiff had not taken medication in more than three years; and poor right eye vision (*id.*). Dr. Saad opined that Plaintiff's prognosis was fair and stated that there were no significant physical restrictions based upon his findings during evaluation (*id.*).

Plaintiff was referred for a medical evaluation in April 2009 with Dr. Guillermo Suarez based on her complaints of pain in her neck, upper and lower back, and right leg (Tr. 289-95). Upon examination, Plaintiff had tenderness, muscle spasms, and loss of the normal lordotic curvature of the cervical spine and also had tenderness and spasms in the thoracic and lumbar spine (Tr. 290). She had no abnormalities in her reflexes, strength, or sensation in her upper or lower extremities except for an arthritic deformity of both knees and a tender right ankle with limited range of motion, yet she required no assistive device (Tr. 290-91). Dr. Suarez opined that Plaintiff had a 10 percent deficit in her cervical spine and a 20 percent deficit in her thoracic and lumbar spine (Tr. 290). Plaintiff's neurological examination indicated that she had normal findings regarding her orientation, alertness, cognition, speech, response to verbal stimuli, response to painful stimuli, comprehension, sensory perception, and motor response, but she had a depressed mood, a flat affect, a mildly antalgic gait, and was unable to pick a coin up off of the floor, walk on her heels and toes, or squat (Tr. 291-92). Dr. Suarez's diagnostic impressions included hypertensive cardiovascular disease, spinal spondylosis, status post multiple injuries caused by an abusive husband, chronic cervical sprain/strain, chronic low back pain syndrome, possible herniated lumbar disc, right lumbar radiculopathy, and depression/anxiety syndrome (Tr. 292). Dr. Suarez recommended that Plaintiff be referred to an internist, an orthopedic surgeon, and psychiatrist or psychologist and that she obtain an MRI of the lumbar and cervical spine (*id.*).

In June 2009, Donna Smith performed a Physical Residual Functional Capacity Assessment as a SDM (Tr. 316-23). Smith found that Plaintiff retained the RFC to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk with normal breaks

about 6 hours in an 8-hour workday, sit with normal breaks for about 6 hours in an 8-hour workday, and had no limitations in pushing or pulling, other than as stated for lifting and carrying (Tr. 317). Smith found that Plaintiff had no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations (Tr. 318-20). Smith also stated that Plaintiff was only partially credible as some of her functional statements were reasonable while others were disproportionate when weighed against the overall objective medical evidence of record (Tr. 321).

Plaintiff met with Dr. Joseph Walsh in December 2009 for complaints of right hand and back pain (Tr. 359-62). Plaintiff was diagnosed as having leg and arm pain (Tr. 361). Accordingly, she was continued on medication and instructed to follow up with someone for chronic medical problems and health maintenance issues (Tr. 362).

Following that, in January and March 2010, Plaintiff presented to the Manatee Memorial Hospital emergency room (Tr. 342-51). Plaintiff complained of right-side weakness, paresthesia, numbness, and pain in the right arm, shoulder, leg, and back (Tr. 346, 348, 350). Plaintiff's maximum deficit was described as mild (Tr. 348). Upon examination, Plaintiff was observed as having no abnormal findings, except that she had some tenderness over her right trapezius and paravertebral musculature and her right SI joint (Tr. 349). Plaintiff was diagnosed with cervical radiculopathy, muscle spasm, and acute right-sided sciatica and was referred for a CT scan and further evaluation and prescribed Flexeril (*id.*). A CT scan later showed no acute intra-cranial changes or other abnormalities (Tr. 346). When Plaintiff followed up to review her CT scan results, she reported having no current pain (Tr. 356).

In August 2010, Plaintiff complained of back pain and therefore had an X-ray taken of her spine (Tr. 366). The X-ray indicated that no fracture, subluxation, spondylolysis, or sondylolisthesis existed and the spinous processes and transverse processes appeared normal (*id.*). It indicated that there was narrowing of the displaced L-5/S-1 and nitrogen disc formation at that location (*id.*). No recommendations or other findings were listed.

In finding that Plaintiff retained the RFC to perform light work, the ALJ considered and discussed the objective medical evidence and other evidence of record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (stating that the Commissioner determines a claimant's RFC based on all of the relevant medical evidence and other evidence). He did not, as Plaintiff contends, rely solely upon the opinion of the SDM. In fact, the ALJ did not mention the SDM's opinion in his analysis of Plaintiff's RFC (Tr. 24-27). Even so, the SDM's findings comport with a RFC to perform light work (*see* 316-23). Furthermore, as the ALJ discussed in his decision, the record supports a finding that Plaintiff retained the RFC to perform light work. Indeed, as the ALJ stated, Plaintiff's sparse treatment record for her back, neck, leg, and arm pain combined with the findings upon examination and objective medical evidence indicate that Plaintiff could perform the exertional requirements of light work. Dr. Saad found that Plaintiff had "no significant physical restrictions" and observed that she had no abnormal findings upon examination in August 2008 (Tr. 256-259). During other examinations Plaintiff exhibited only tenderness or mild deficits in functioning (Tr. 279, 348, 349). Further, she demonstrated a normal range of motion and normal strength in her extremities (Tr. 279, 349, 353). To the extent that Dr. Suarez's findings showed abnormal findings, and thus conflicted with the other evidence of record, the

ALJ addressed the conflict stating that, although Plaintiff's back impairment may have worsened between examinations, no explanation was given as to why the impairment may have worsened or objective imaging indicating a worsening in Plaintiff's impairment (Tr. 26). Where the evidence of record is inconsistent, as in this instance, the ALJ must weigh the relevant evidence and determine whether a determination about disability can be made based on the evidence available. 20 C.F.R. §§ 404.1520b(b), 416.920b(b). As stated previously, in reviewing the Commissioner's decision, courts may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth* , 703 F.2d at 1239. Here, the ALJ applied the appropriate legal standards by properly considering the evidence of record, addressing the inconsistencies in the record, weighing the evidence, and determining that Plaintiff retained the RFC to perform the exertional limitations of light work based on the evidence of record. Substantial evidence supports the ALJ's decision in that regard.

**B. Mental Impairment**

Plaintiff also argues that the ALJ's finding as to the severity of Plaintiff's mental impairments is not supported by substantial evidence, especially in light of the new evidence submitted to the Appeals Council. Essentially, Plaintiff contends that the ALJ's RFC finding, which limited Plaintiff to unskilled work, failed to fully account for the limitations she suffered as a result of her mental impairments. Given Plaintiff's limited mental health treatment and the medical evidence of record, however, the ALJ properly found that Plaintiff's mental impairments did not limit Plaintiff to the extent that she alleged, and the ALJ properly accounted for Plaintiff's

mental limitations.

In September 2008, Plaintiff was seen by Dr. Melissa Trimmer for a consultative psychological examination (Tr. 264-67). During the examination, Dr. Trimmer noted that Plaintiff reported that she had been hospitalized twice in the 1980s for depression with suicidal ideation but had no history of outpatient psychiatric treatment (Tr. 264). As to her current functioning at the time of the examination, Plaintiff reported that she had difficulty falling asleep, had a variable appetite, had a history of symptoms consistent with mood disturbance and anxiety or post-traumatic stress disorder, heard voices that she could not understand but that she knew were not real, denied a history of command hallucinations, admitted to a history of suicidal ideation but denied intent or plan, and denied any past or present homicidal ideations (*id.*). Upon examination, Dr. Trimmer observed Plaintiff's demeanor and responsiveness to questions as cooperative with a manner of relating, social skills, and overall presentation that were each adequate (Tr. 265). Plaintiff looked her age, was appropriately dressed, had good personal hygiene and grooming, had a right facial droop, used no assistive devices, had appropriate eye contact, and had normal posture, gait, and motor behavior (*id.*). She had fluent speech, a clear voice, adequate expressive and receptive language, and coherent thought processes that were goal-directed with no evidence of delusions, hallucinations, or disordered thinking (*id.*). Her affect was congruent with her thoughts and speech, she was oriented on all spheres, her attention and concentration were intact, she was able to count and perform simple calculations, her recent and remote memory skills were intact, and her insight and judgment were good, although Plaintiff's mood was depressed (Tr. 265-66). Plaintiff reported that she was able to dress, bathe,

and groom herself and could cook and prepare food, do general cleaning and laundry, manage money, take public transportation, and get along with friends and family (Tr. 266).

Dr. Trimmer opined that Plaintiff appeared capable of understanding and following simple instructions and directions, capable of performing most familiar complex tasks independently, capable of maintaining attention and concentration for straightforward tasks, capable of learning new tasks, capable of making appropriate decisions, able to relate to and interact appropriately with others, capable of managing money, and had a fair ability to attend to a routine and maintain a schedule but would have difficulty dealing with stress (Tr. 266-67). Dr. Trimmer diagnosed Plaintiff as having a mood/psychotic disorder not otherwise specified, but needed to rule out post-traumatic stress disorder (Tr. 267). Accordingly, Dr. Trimmer recommended that Plaintiff become involved with psychological and psychiatric treatment to help her cope with her problems and assigned her a fair to guarded prognosis (*id.*).

Subsequently, Dr. Judith Meyers filled out a Psychiatric Review Technique in June 2008 (Tr. 367-80). Dr. Meyers found that Plaintiff had a mood/psychotic disorder, not otherwise specified (Tr. 369, 370). Dr. Meyers determined that Plaintiff had only mild limitations in concentration, persistence, or pace and no restrictions or difficulties with activities of daily living or maintaining social functioning and no episodes of decompensation of extended duration (Tr. 377). In considering Plaintiff's functional statements, Dr. Meyers found them only partially credible and therefore found that Plaintiff suffered only a mild decrease in mental functioning as a result of her medically determinable impairment (Tr. 379).

Plaintiff met with Dr. John Super in May 2009 for a consultative psychological evaluation

(Tr. 297-301). After noting Plaintiff was a vague historian, Dr. Super asked her why she was seeking disability benefits, to which she responded that she had a lot of health and mental problems and pain that keep her from working (Tr. 298). Plaintiff told Dr. Super that the reason she stopped working was because "she wanted to stay home because of the drugs and alcohol" and reported that she spent much of her free time relaxing (*id.*). Plaintiff reported that she had been briefly hospitalized a month prior to the evaluation following a suicide attempt but was transferred to Manatee Glens pursuant to the Baker Act, where she remained for one day (Tr. 297-98). She also reported a history of drug and alcohol abuse, including heavy use of crack cocaine between 1994 and 2008 but stated that she ceased consumption of alcohol four days prior to her appointment (Tr. 299). According to Dr. Super, Plaintiff appeared disheveled, had poor hygiene and cleanliness, had slightly agitated motor behavior, had normal posture, interacted in a friendly manner, had appropriate eye contact, and had speech quantity and quality within normal limits (*id.*). Dr. Super noted that Plaintiff did not have any mental health symptoms suggestive of psychotic processes present, she was alert and oriented, she had a calm mood, her features of depression appeared mild and included a depressed mood, she had no features of mania or anxiety present, her thought processes were logical and coherent, her thought content was void of delusions, her mental processing speed was normal, she performed basic addition and subtraction of single-digit numbers, she reported no perceptual disturbances, her impulse control appeared poor, and her judgment and insight appeared borderline (Tr. 299-300). Dr. Super opined that Plaintiff did not appear competent to manage her finances due to her alcohol abuse (Tr. 300). Dr. Super diagnosed Plaintiff with only alcohol dependence and cocaine dependence apparently in

remission (*id.*). He recommended that Plaintiff be clean and sober for one year and then be reevaluated for eligibility for disability benefits (*id.*).

Dr. James Meyers filled out a Psychiatric Review Technique in June 2009 (Tr. 302-15). He found that Plaintiff suffered from alcohol dependence and was only mildly restricted in her mental functioning, in her activities of daily living and in her ability to maintain concentration, persistence, or pace (Tr. 311-12, 314). He further found that Plaintiff had no difficulties in maintaining social functioning and had no episodes of decompensation of extended duration (Tr. 312, 314). Dr. Meyers found Plaintiff's complaints reasonable and thus found Plaintiff credible (Tr. 314).

Following that, in August 2009, Dr. Robert Schilling filled out a Psychiatric Review Technique (Tr. 325-38). Dr. Schilling found that Plaintiff suffered from alcohol dependence but could not elaborate on her functional limitations since insufficient evidence existed in the record to make such a determination (Tr. 333, 335). Dr. Schilling noted that Plaintiff had no mental health treating sources as of her date of last insured of March 31, 2004, so he could not opine as to the presence of functional limitations through her date of last insured (Tr. 337).

Plaintiff visited Manatee Glens in February 2010, where she received a single medication evaluation (Tr. 341). During that evaluation, Plaintiff's appearance was normal and casual and she had a withdrawn attitude, anxious mood, slow and soft speech, appropriate affect and thought process, and was fully oriented but reported auditory and visual hallucinations (*id.*). The evaluator observed Plaintiff as having symptoms of depression, anxiety, panic, post-traumatic stress disorder, psychosis auditory hallucinations, and financial psychosocial issues (*id.*). Plaintiff

reported that her audio and visual hallucinations had lessened, she was participating in group therapy, she was currently clean and sober, and medication helped with her sleep but caused some mood and appetite fluctuations (*id.*). The evaluator recommended that Plaintiff continue her medications (although the evaluator did not indicate what medications Plaintiff had been prescribed), adding cogentin for muscle stiffness, and encouraged Plaintiff to attend 12-step meetings and attend therapy (*id.*).

As the ALJ noted, and as the medical evidence of record indicates, Plaintiff presented a minimal history of psychiatric treatment (Tr. 26). According to Plaintiff, with the exception of her one reported hospitalization for a purported suicide attempt, Plaintiff had not been hospitalized for mental health impairments since the 1980s (Tr. 26, 256, Tr. 297-98). In fact, she denied any treatment for mental health for the past 25 years prior to her August 2008 internal medical examination with Dr. Saad and reported having no outpatient psychiatric treatment to Dr. Trimmer in September 2008 (Tr. 26, 256, 264). Even so, the medical evidence presented by Plaintiff demonstrated that she had suffered, at most, only mild limitations in her activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace (Tr. 265-67, 299-300, 312, 314, 377, 379). Notwithstanding, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace and attempted to account for those limitations by limiting Plaintiff to unskilled work (Tr. 26).

Courts have rejected a finding that an ALJ accounts for moderate limitations in concentration, persistence, or pace in the RFC by limiting a plaintiff to unskilled work. *See, e.g., Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1302 (M.D. Fla. 2011); *Millhouse v. Astrue*, No. 8:08-

cv-378-T-TGW, 2009 WL 763740, *2-*3 (M.D. Fla. Mar. 23, 2009). Though generally an ALJ cannot account for a claimant's limitations in concentration, persistence, and pace by restricting a claimant to simple, routine tasks or unskilled work, when the medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, or pace, courts may conclude that a limitation to unskilled work sufficiently accounts for the claimant's limitations. *See generally, Scott v. Comm'r of Soc. Sec.*, No. 11-15252, 2012 WL 5358868, *2 (11th Cir. Oct. 31, 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Indeed, "[u]nskilled work has been found insufficient to account for difficulties in concentration, persistence, or pace, *unless* the medical evidence clearly demonstrates otherwise." *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1318 (M.D. Fla. 2012) (emphasis added; citations omitted). Based on the record in this case, it is clear that Plaintiff repeatedly presented with a logical and coherent thought process, intact attention and concentration, ability to perform counting and simple calculations, intact recent and remote memory, ability to understand and follow simple instructions and directions, ability to maintain attention and concentration for straightforward tasks, ability to learn new tasks, and normal mental processing speed (Tr. 265-67, 299-300). Although Plaintiff's intellectual functioning was estimated to be in the low average range (Tr. 266), unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Plaintiff failed to demonstrate that a limitation to unskilled work did not account for her limitations in concentration, persistence, or pace as a result of her mental impairment, given her medical history and findings upon examination. *See generally Carnes v.*

*Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("The burden is upon the claimant to demonstrate the existence of a disability as defined by the Social Security Act.").

Instead, Plaintiff argues that the fact that the ALJ found that Plaintiff suffered from the severe impairments of bipolar disorder and depression (Tr. 21) and that Plaintiff reported auditory and visual hallucinations renders the ALJ's findings erroneous. Plaintiff seems to argue that a diagnosis of bipolar disorder and depression and the recognition by a mental health practitioner of Plaintiff's complaints of hallucinations somehow equates to a finding of disability. "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005). Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The record is devoid of any evidence indicating Plaintiff's ability to work was impacted by Plaintiff's bipolar disorder, depression, or alleged hallucinations greater than what the ALJ identified in his decision.

Plaintiff also argues that the treatment note from Manatee Glens indicating that Plaintiff was taking medication and participating in group therapy contradicts the ALJ's findings that Plaintiff did not take medication for her mental impairments and had a limited treatment history (Tr. 26). Although the medication evaluation note indicates that Plaintiff was prescribed medication and receiving therapy, the note does not indicate what medication Plaintiff was prescribed and no treatment notes from therapy at or around the time of the Manatee Glens visit

appear in the record. Plaintiff has the burden of demonstrating disability and providing the Commissioner with medical and other evidence upon which to base a conclusion about her medical impairments. *Carnes*, 936 F.2d at 1218; 20 C.F.R. §§ 404.1512(a), 416.912(a). Upon review of the record, it is devoid of any notes or records regarding any therapy or medication received around February 2010.[3]

In fact, the only records pertaining to prescriptions were submitted to the ALJ subsequent to the ALJ's decision. Following issuance of the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council, which the Appeals Council then considered in finding no basis to overturn the ALJ's decision (Tr. 1-6, 249-54).[4] In this instance, the additional evidence does not render the denial of benefits erroneous or establish that Plaintiff's mental impairments were more severe than that found by the ALJ or that her mental impairments limited her work abilities to a greater extent than articulated by the ALJ. Indeed, the only medical evidence submitted to the Appeals Council consisted of a May 2010 prescription order for chart at Manatee Glens (Tr. 249-50). Though Plaintiff purportedly received prescriptions for medication related to depression

---

[3] Even so, the note from Manatee Glens indicated that Plaintiff was sleeping better and had less hallucinations and thus demonstrated that at least some of her subjective complaints had improved (Tr. 341).

[4] When a claimant appeals an ALJ's decision to the Appeals Council, "[t]he Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)(quoting 20 C.F.R. § 404.970(b)). Thereafter, review by a federal district court requires consideration of evidence not initially submitted to the administrative law judge but considered by the Appeals Council in order to determine whether that new evidence renders the denial of benefits erroneous. *Ingram*, 496 F.3d at 1258, 1262.

and psychotic disorders, the fact that Plaintiff was prescribed these medications does not demonstrate how or if Plaintiff's ability to work was effected by her mental impairments. As noted, the ALJ found that Plaintiff's bipolar disorder and depression constituted severe mental impairments. The fact that Plaintiff subsequently received medication for these impairments does not equate to a finding that Plaintiff's ability to work was effected or that Plaintiff's mental impairments were more severe than the ALJ determined. This new evidence submitted to the Appeals Council in no way supports a finding of mental impairments of greater severity nor supports a finding of disability based on Plaintiff's mental impairments.

**C. VE**

Additionally, Plaintiff contends that the ALJ erred by relying upon the Grids instead of consulting a VE in determining Plaintiff's ability to perform other work. At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). There are two avenues by which an ALJ may determine a claimant's ability to adjust to

other work in the national economy; namely, by applying the Grids and by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. Indeed, exclusive reliance on the Grids is not appropriate under either of those circumstances. *Phillips*, 357 F.3d at 1242.

When both exertional and non-exertional impairments exist, the Grids may still be applicable, however. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Indeed, where the ALJ considers the non-exertional limitations, the ALJ need only determine whether the non-exertional limitations significantly limit the claimant's basic work skills, meaning that the claimant has limitations that prohibit him or her from performing "a *wide* range" of work at a given level. *Phillips*, 357 F.3d at 1243 (emphasis in original); *Sryock*, 764 F.2d at 836 ("'[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level'" (citations omitted)). If the ALJ determines that a claimant's non-exertional limitations do not significantly limit his or her basic work skills at a specific work level, the ALJ may rely on the Grids in determining whether the claimant is disabled. *Phillips*, 357 F.3d at 1243. If, however, the ALJ determines that a claimant's non-exertional limitations significantly limit the claimant's basic work skills at a given work level, the ALJ must consult a VE. *Id.* Applying the Grids to a claimant who has non-exertional impairments requires the ALJ to make a "specific finding" as

to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level. *Foote*, 67 F.3d at 1559; *see also Sryock*, 764 F.2d at 836. Courts review the ALJ's determination regarding the severity of the non-exertional impairments only to determine whether it is supported by substantial evidence. *Sryock*, 764 F.2d at 836.

Here, in rendering Plaintiff's RFC, the ALJ found that Plaintiff had exertional limitations that limited Plaintiff to light work and non-exertional limitations that limited Plaintiff to unskilled work (Tr. 24-27). More specifically, with respect to the non-exertional limitations, the ALJ found that, despite Plaintiff's minimal mental health treatment, mild depressive symptoms, and lack of medication for her mental impairments, Plaintiff had moderate difficulties with concentration, persistence, or pace that required a limitation to unskilled work (Tr. 26).[5] As discussed in greater detail above, in accounting for Plaintiff's limitations, the ALJ properly limited Plaintiff to unskilled work based upon the evidence of record related to Plaintiff's mental impairments.

Taking that into consideration, at step five of the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past work, Plaintiff could perform other jobs existing in significant numbers in the national economy, even with her non-exertional limitations (Tr. 27-28). In finding that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, the ALJ did not consult a VE but instead relied on Rule 202.17 and 202.10 of the Grids, each of which directed a finding of not disabled. *See* 20

[5] As noted above, the Regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. ..." 20 C.F.R. §§ 404.1568(a), 416.968(a).

C.F.R. Pt. 404, Subpt. P, App. 2. In doing so, the ALJ made an explicit finding that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work" (Tr. 28). Accordingly, the ALJ complied with his duty at step five. *Phillips*, 357 F.3d at 1243; *Foote*, 67 F.3d at 1559; *see also Sryock*, 764 F.2d at 836.

Furthermore, substantial evidence supports the ALJ's conclusion. For instance, as noted above, Dr. Trimmer found that Plaintiff had fluent speech, a clear voice, adequate expressive and receptive language, and coherent thought processes that were goal-directed with no evidence of delusions, hallucinations, or disordered thinking (Tr. 265). Further, Dr. Trimmer found Plaintiff's affect congruent with her thoughts and speech, she was oriented on all spheres, her attention and concentration were intact, she was able to count and perform simple calculations, her recent and remote memory skills were intact, and her insight and judgment were good (Tr. 265-66). Most importantly, Dr. Trimmer opined that Plaintiff was capable of understanding and following simple instructions and directions, performing most familiar complex tasks independently, maintaining attention and concentration for straightforward tasks, learning new tasks, making appropriate decisions, relating to and interacting appropriately with others, managing money, and attending to a routine and maintaining a schedule (Tr. 266-67). In addition, Dr. Super found that Plaintiff did not have any mental health symptoms suggestive of psychotic processes present, she was alert and oriented, she had a calm mood, her features of depression appeared mild, she had no features of mania or anxiety present upon examination, her thought processes were logical and coherent, her thought content was void of delusions, her mental processing speed was normal, and she reported no perceptual disturbances (Tr. 299-300). Moreover, both state agency medical

consultants found that Plaintiff had only mild restrictions in concentration, persistence, or pace and that Plaintiff had only a mild decrease in mental functioning (Tr. 311-12, 314, 377, 379).

As Plaintiff's findings upon examination and upon review of her medical history indicate, Plaintiff was not significantly limited in her ability to perform a wide range of work functions as a result of her non-exertional impairments. Accordingly, the ALJ properly found that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled light work and that finding was supported by substantial evidence. As such, the ALJ applied the appropriate legal standards in using the Grids rather than the testimony of a VE to assess Plaintiff's ability to perform other work.

**D. Third-Party Testimony**

Lastly, Plaintiff contends that the ALJ erred by failing to consider the Supplemental Third-Party Pain Questionnaire submitted by Ellie Marshall (Tr. 176-77). According to Marshall, Plaintiff complained of pain all or most of the day, took over-the-counter pain medications or naproxen sodium by direction for the pain, had no side effects from her medication, and had not required any other types of treatment or therapy for relief of her pain (Tr. 176). Marshall further stated that Plaintiff occasionally had problems standing through her whole meal, took her time cleaning the house, did her laundry slowly, went to the grocery story once per month, complained of tossing and turning in her sleep, and only sat, stood, or walked occasionally or for a short while because it hurt her back when she walked or sat in a place for too long (Tr. 176-77). Marshall also stated that Plaintiff never drove, performed work in the yard or gardens, engaged in social activities or hobbies, handled childcare, or performed home maintenance activities (Tr. 177).

According to Plaintiff, if the ALJ had properly credited Marshall's statements, the ALJ would find that Plaintiff was unable to perform the requirements of light work.

In social security disability cases, credibility determinations fall within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints and must provide specific reasons for the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). An ALJ should state the weight afforded to the impairment evidence of record and the reasons for accepting or rejecting that evidence, including testimony evidence. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (citations omitted). Where an ALJ fails to make an explicit credibility finding as to a third party's testimony or statements, however, a court need not find error if the credibility determination was implicit in the rejection of the claimant's testimony. *Osborn v. Barnhart*, 194 Fed. App'x 654, 666 (11th Cir. 2006).

As an initial matter, nothing in the record indicates Marshall's relationship to Plaintiff. As such, it is unclear in what capacity Marshall is able to provide testimony regarding Plaintiff's purported impairments or limitations. Notwithstanding, Marshall's testimony duplicated that of Plaintiff's testimony. Indeed, Plaintiff provided testimony that performing yard work hurt her back, she could not stand or walk for long periods of time because of back pain, she could go to the grocery store but not walk around a long time, she did not have a license and was scared of traffic so did not drive, and she could only sit for about 30 minutes at the most (Tr. 43-45). In his decision, the ALJ addressed Plaintiff's testimony and subjective complaints and articulated

numerous reasons for discrediting them (Tr. 24-27). Namely, the ALJ found that Plaintiff made inconsistent statements regarding such matters as why and when she stopped working, the objective medical evidence did not support the severity of the back and leg pain Plaintiff alleged or the limitations Plaintiff alleged regarding her hand, Plaintiff sought minimal treatment for her mental impairments, and Plaintiff's extensive history of substance abuse further negated Plaintiff's credibility regarding her alleged psychological symptoms (Tr. 24-27). Given that Marshall's testimony duplicated Plaintiff's testimony, which the ALJ appropriately found not credible, it is clear that the ALJ implicitly rejected Marshall's statements even though he did not make an explicit finding as to Marshall's statements. *East v. Barnhart*, 197 Fed. App'x 899, 901 n.3 (11th Cir. 2006) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)); *Osborn*, 194 Fed. App'x at 666. Accordingly, the ALJ did not err by failing to make an explicit credibility finding as to Marshall. The ALJ's decision clearly and appropriately found Plaintiff's testimony and subjective complaints not credible and thereby implicitly yet clearly found Marshall's nearly identical recitation of Plaintiff's impairments and limitations not credible. *See Harrington v. Astrue*, No8:08-cv-1702-T-TBM, 2009 WL 3232347, *7 (M.D. Fla. Sept. 29, 2009) (finding an ALJ did not err where the ALJ failed to state the weight afforded to the testimony of a plaintiff's mother because the mother's testimony largely corroborated the plaintiff's testimony, which the ALJ explicitly discounted).

**IV.**

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 12th day of February, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Steven D. Merryday
Counsel of Record